[No. 19561.   Department One.   April 23, 1926.]

MAY BINGAMAN, *Appellant*, v. THE CITY OF SEATTLE,
*Respondent.*[1]

[1] MUNICIPAL CORPORATIONS (191)—STREET IMPROVEMENTS—REMOVAL OF LATERAL SUPPORT—MEASURE AND AMOUNT—DAMAGES. A verdict against a city for nominal damages suffered from a progressive slide of property abutting upon a regraded street cannot be sustained where, on the defendant's testimony alone, there was substantial damages of not less than $1,000 as shown by expert evidence as to the value of the property before and after the slide, showing that it had decreased the market value of the property; notwithstanding it was claimed that the property had no market value, it appearing that it had some value.

[2] DAMAGES (5) — NOMINAL DAMAGES — NATURE AND THEORY OF AWARD. A verdict for nominal damages upon a simple issue as to whether there was or was not a liability, is a finding in favor of the plaintiff as to the defendant's liability.

[3] WITNESSES (81)—CROSS-EXAMINATION—SCOPE—TRUTH OF DIRECT TESTIMONY. Upon cross-examination of an expert witness as to values, it is error to refuse to allow the party to show what he had testified to in other similar cases at a time not too remote to raise the presumption that values had changed.

[4] APPEAL (126)—PRESERVATION OF GROUNDS—MISCONDUCT OF COUNSEL. Error cannot be assigned upon misconduct of counsel in improper insinuations on cross-examination where no objection was made at the time nor until after the verdict.

[5] SAME (487)—DECISION—MATTERS DETERMINED WITHOUT REMAND. Upon reversing a judgment for nominal damages, where it appears from defendant's evidence that plaintiff sustained substantial damages, the appellant will be allowed a judgment for the least amount testified to by the defendant's witnesses.

Appeal from a judgment of the superior court for King county, Paul, J., entered April 29, 1925, upon the verdict of a jury rendered in favor of the defendant, in an action for damages for removal of lateral support. Reversed.

[1]Reported in 245 Pac. 411.

*Edward H. Chavelle* and *Donworth, Todd & Higgins,* for appellant.

*Thomas J. L. Kennedy, Ray Dumett,* and *J. Ambler Newton,* for respondent.

FULLERTON, J.—The appellant, Bingaman, plaintiff below, is the owner of lots 9 and 10, in block 4, of Brawley's addition to the city of Seattle, on lot 10 of which is situated a two-story brick building. To the south of the property is a public street known as Main street, extending east and west, on which the lots abut. One block south of Main street is another public street known as Jackson street, also extending east and west. In 1909, the city of Seattle regraded Jackson street, and in so doing made a cut, to the south of the appellant's property, ranging in depth approximately from 72 to 85 feet. Following the regrade, the surface ground lying between Jackson street and Main street began to slide into the former street, and has continued to so slide from that time until the present. By the time of the latter part of the year 1922, the slide had reached and extended across Main street, and invaded the appellant's property. On January 6, 1923, a part of the ground on which her building stood gave way, causing the southwest corner of the building to break away and fall. In this action the appellant sought to recover from the city of Seattle for the damages suffered. There was a trial before a jury, in which a verdict in damages of one dollar was returned. A judgment was entered on the verdict, and from the judgment the present appeal is prosecuted.

The liability of the city to answer in damages for injuries to private property caused by the sliding can hardly be said to be any longer an open question. The question of its liability has been a subject of controversy between the city and the different property own-

ers affected thereby, almost from the time of the completion of the regrade, and this court has uniformly sustained its liability. *Farnandis v. Seattle,* 95 Wash. 587, 164 Pac. 225; *Blomskog, Erickson & Cotton v. Seattle,* 107 Wash. 471, 182 Pac. 571; *Kent v. Seattle,* 121 Wash. 327, 209 Pac. 529; *Island Lime Co. v. Seattle,* 133 Wash. 270, 233 Pac. 273; *Davis v. Seattle,* 134 Wash. 1, 235 Pac. 4.

We have also held that the question of negligence on the part of the city is not an element entering into the controversy; "that in cases of this kind it is not necessary that negligence be shown before a recovery can be had." *Kent v. Seattle; Davis v. Seattle, supra.*

[1] The appellant's chief complaint is that the damages returned by the jury are inadequate. That she suffered a substantial damage, the evidence hardly leaves in doubt. It is true, that, owing to the peculiarities of the statute, this is an instance where the injured party, contrary to the usual rule, cannot recover in one action all of the damages that have resulted, or may result, from the action of the city, but must recover in repeated actions as the damages accrue. *Island Lime Co. v. Seattle,* 122 Wash. 632, 211 Pac. 285; 133 Wash. 270, 233 Pac. 273. Yet the evidence is all to the effect that the damages accruing, within the limitation of time the jury were permitted to consider, were substantial. Indeed, none of the witnesses for the city estimated them at less than $1,000, and on the evidence of these witnesses alone a larger verdict than $1,000 would have been permissible. The jury, it will be remembered, returned a verdict in favor of the appellant. This was a finding, even if it could be said that there was a substantial controversy over the fact, that the city was liable for the actual damages suffered. The record, therefore, as we view it, presents

an instance where the jury, convinced of the merit of the plaintiff's claim, refused to return a verdict in accordance with the merit of the claim. Such a verdict is not in accord with substantial justice. It is, on the contrary, a perversion of justice, and should not be allowed to stand.

The reasons advanced for sustaining the verdict perhaps require notice. The trial judge, in passing upon the appellant's motion to set aside the verdict and grant a new trial, used this language:

"The matter to which I have given most attention is the verdict of the jury for nominal damages. In passing upon this ground of the motion, the court has accepted the contention of the plaintiff that the verdict fixes liability, and if the weight of the evidence shows substantial damages a new trial should be granted.

"But in order to find that the verdict is against the weight of the evidence on this ground, there must be some evidence at least from which the jury might have arrived at a substantial amount of damages. Such evidence the court is unable to find in the record. While it is apparent that there was a physical change in the condition of the premises before and after the slide for which damages might have been allowed if the proof was satisfactory, the court's recollection is that the value testimony actually offered on behalf of both parties contained elements which cannot be taken into consideration under the rule announced by the supreme court in this class of cases.

"Therefore, the only way that the court, even if sitting as a juror as counsel for plaintiff suggests, could have arrived at a verdict for substantial damages, would have been the rough speculation or arbitrary apportionment not justified by the record. Especially is this true since the burden of proof rests on the plaintiff in regard to the amount of damages.

"Furthermore, it is entirely reasonable to say, in view of the record, that though there was physical damage done, the property had no market value prior to

the slide, in which event the plaintiff was not financially damaged by the change in condition."

Neither of the reasons here assigned for sustaining the verdict do we find tenable. The testimony to show damages—the "value testimony" referred to by the trial judge—was, as we view it, in accord with the rule as we have hereinbefore announced it, and not contrary thereto. The measure of damages was the difference between the value of the property before the slide encroached upon it and its value after that event; *Seattle Mattress & Upholstery Co. v. Seattle*, 134 Wash. 476, 236 Pac. 84, and the questions propounded to the witnesses on both sides contained nothing, in so far as we are able to discover, not pertinent to that issue. Nor do we think it reasonable to say that the property had no market value before the slide. Unquestionably, the approaching slide had a tendency to depreciate its market value, but that it had such a value, both before and after the slide, was the testimony of all the witnesses.

[2] The city argues that the verdict of the jury was, in its substance and effect, a finding in its favor on the question of liability. There are cases which maintain the doctrine that a finding of nominal damages in favor of a plaintiff is, in some instances, equivalent to a finding against him, and our case of *Krulikoski v. Sparling*, 82 Wash. 474, 144 Pac. 692, recognizes the rule. It would seem, however, that it is a rule that should be sparingly applied. There is an incongruity in saying that a verdict in favor of a party is a verdict against him, and the reason for so saying in any instance should at least be clear. Here, the issue on this question was simple and plain. It was merely a question of liability or no liability. There was room for the jury to make but one of two findings.

They must find either for the plaintiff or the defendant, and must make the finding before they proceeded to assess the damages. When, therefore, they found, as they did in this instance, "for the plaintiff in the sum of" one dollar, it was a finding in favor of the plaintiff on the question of liability, incapable by construction of any other meaning.

[3] Of the trial-errors assigned necessary to be noticed, the first is the contention that the trial court too narrowly restricted the cross-examination of certain of the city's witnesses. One of them, testifying to values, had testified in a case between other parties, in which he had placed values on neighboring property largely in excess of the values he placed on the appellant's property. The appellant, on his cross-examination, sought to show this fact, but was denied the right so to do by the court. It is our opinion the testimony should have been admitted. There was no great dissimilarity in the situation or in the condition of the properties, nor was the time so remote as to raise a conclusive presumption that there had been any considerable change in values. The evidence was thus admissible as tending to affect the weight to be given to the witnesses' testimony.

[4] In the cross-examination of one of the plaintiff's witnesses the following appears:

"Q. You know, do you not, that the building of the plaintiff is being rented at the present time? A. Yes sir, it is occupied, and I was told they were paying rent. Q. Did they tell you how much they were paying? A. The Japanese said he was paying $25 and had been paying that for 15 years until the building broke, and he occupied just half the building, and now a portion of the building has broken away, so he got over to the west side. Q. He said he had been paying it for 15 years? A. Yes, sir. Q. Do you know what they are paying upstairs? A. I was told they were paying some-

thing like a couple of hundred dollars unfurnished, but I think that is more rental than it should bring. Q. That is more than they should get for any reasonable purpose, is it not? A. It would seem so to me.''

The objection is to the last question quoted. It is thought to contain an immaterial and vicious insinuation, the suggestion of which amounted to misconduct on the part of the attorney conducting the examination. The question was not objected to at the time it was propounded, nor was the court asked to rule concerning it until after the return of the verdict. Conceding that it bears the interpretation the appellant puts upon it, we think the appellant was too late in his objection to make the error available to him.

[5] Our conclusion requires a reversal of the cause, but not necessarily a new trial. As we have said, the lowest estimate of the appellant's damages by any of the city's witnesses was $1,000, and the city is not in a position to object to a judgment against it for a sum in that amount. Our order will be, therefore, that the judgment be reversed and the cause remanded, with the instruction to grant to the plaintiff the option to take a judgment against the city for the sum of $1,000 and costs, or a new trial.

TOLMAN, C. J., MAIN, and HOLCOMB, JJ., concur.

MACKINTOSH, J. (concurring)—The only disagreement that I have with this opinion is that the amount of the judgment should be more than $1,000.